# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **PAUL JOHNSON,** | § | **Civil Action No. 4:18-cv-04476** |
| Individually and on behalf | § | |
| of all others similarly situated | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **NATION WASTE, INC.** | § | |
| | § | **COLLECTIVE ACTION** |
| *Defendant.* | § | **PURSUANT TO 29 U.S.C. § 216(b)** |

## APPENDIX OF EXHIBITS
## TO PLAINTIFFS' OPPOSED MOTION AND BRIEF IN SUPPORT FOR
## CONDITIONAL CERTIFICATION AND NOTICE TO PUTATIVE CLASS MEMBERS

| Exhibit | Description |
|---|---|
| 1 | Declaration of Paul Johnson |
| 2 | Declaration of Christopher Jenkins |
| 3 | *Falcon v. Starbucks Corp.*, Civ. A. No. H-05-0792 (ECF No. 52) (S.D. Tex. Nov. 29, 2005) |
| 4 | *Rosas v. Dark Star Prod. Testing, Inc.*, No. 2:16-cv-00140, ECF No. 19 (S.D. Tex. Jul. 31, 2017) |
| 5 | Proposed Notice & Consent Form |

Date:   January 18, 2019

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:     /s/ *Clif Alexander*

**Clif Alexander**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy**
Federal I.D. No. 1122168
Texas Bar No. 24071993
lauren@a2xlaw.com
**Alan Clifton Gordon**
Federal I.D. No. 19259
Texas Bar No. 00793838
cgordon@a2xlaw.com
**Carter T. Hastings**
Federal I.D. No. 3101064
Texas Bar No. 24101879
carter@a2xlaw.com
**George Schimmel**
Federal I.D. No. 2338068
Texas Bar No. 24033039
geordie@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys for Plaintiffs and Putative Class Members***

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2019, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PAUL JOHNSON,** | § | **Civil Action No. 4:18-cv-04476** |
| **Individually and on behalf** | § | |
| **of all others similarly situated** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **NATION WASTE, INC.** | § | |
| | § | **COLLECTIVE ACTION** |
| *Defendant.* | § | **PURSUANT TO 29 U.S.C. § 216(b)** |

<u>**DECLARATION OF PAUL JOHNSON**</u>

I, Paul Johnson, being of sound mind and over the age of 18, make the following declaration:

1.      My name is Paul Johnson and the facts contained in this declaration are within my personal knowledge and are true and correct.

2.      I was employed by Nation Waste, Inc. ("Defendant" or "Nation Waste") as a non-exempt Waste Disposal Driver in Houston, Texas from approximately June 2018 until October 2018.

3.      I was a Roll-off Driver throughout my employment with Nation Waste. When I started working for Nation Waste, I was paid $19.00 per hour plus overtime for all hours worked over forty each week.

4.      Nation Waste changed my pay structure to a day rate in the amount of $200.00 and no overtime. Nation Waste paid me $200.00 each day regardless of the number of hours I worked.

5.      Based on conversations I have had with my fellow drivers at Nation Waste, I know that many of them were also switched to a day rate and they were not paid any overtime.

6.      My daily job duties included the collection and delivery of waste containers and compactors for Nation Waste and/or its clients in the Houston, Texas area.

7. I was required, as part of my employment with Nation Waste, to work overtime hours and did work overtime hours on a regular, if not weekly, basis.

8. I know that my fellow co-workers were also required to work overtime hours on a regular, if not weekly, basis.

9. Nation Waste automatically deducted a thirty-minute meal period from my daily hours, even though I regularly worked through my meal period on Nation Waste's behalf. Specifically, I did not eat lunch or I would eat while working in order to complete my daily route assignments.

10. My fellow drivers had the same routine as me and either ate while working or did not take a lunch break at all. I know this because I talked to my fellow co-workers on a regular basis about this issue.

11. Nation Waste was aware that we ate our lunches while we were on duty and that we either routinely worked through lunch or did not take a lunch at all.

12. I know that Nation Waste was aware that I did not take my lunch break because my daily routes were so time-consuming—that is, I could not complete them and also take an uninterrupted thirty-minute lunch break each day. Further, if I stopped during my route for more than a few minutes my supervisor would call me and tell me that I was not allowed to stop, and that I needed to get moving again right away.

13. Based on conversations I have had with my fellow drivers, I know they would be interested to learn that they may be able to recover their unpaid overtime from Nation Waste.

14. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: __Jan 8, 2019__

*Paul Lee Otis Johnson*
Paul Lee Otis Johnson (Jan 8, 2019)
PAUL JOHNSON

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL JOHNSON, | § | Civil Action No. 4:18-cv-04476 |
| Individually and on behalf | § | |
| of all others similarly situated | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| NATION WASTE, INC. | § | |
| | § | **COLLECTIVE ACTION** |
| *Defendant.* | § | **PURSUANT TO 29 U.S.C. § 216(b)** |

<u>**DECLARATION OF CHRISTOPHER JENKINS**</u>

I, Christopher Jenkins, being of sound mind and over the age of 18, make the following declaration:

1. My name is Christopher Jenkins and the facts contained in this declaration are within my personal knowledge and are true and correct.

2. I was employed by Nation Waste, Inc. ("Defendant" or "Nation Waste") as a non-exempt Waste Disposal Driver in Houston, Texas from approximately June 2016 until April 2017.

3. I was a Commercial Driver throughout my employment with Nation Waste. I was paid $17.00 per hour for all hours worked. I was not paid overtime for any hours worked over forty (40) in a workweek, I was always paid $17.00 per hour for all hours worked.

4. Based on conversations I have had with my fellow drivers at Nation Waste, I know that many of them were also not paid overtime for any hours worked over forty (40) in a workweek.

5. My daily job duties included the collection and delivery of waste containers and compactors for Nation Waste and/or its clients in the Houston, Texas area.

6. I was required, as part of my employment with Nation Waste, to work overtime hours and did work overtime hours on a regular, if not weekly, basis.

7. I know that my fellow co-workers were also required to work overtime hours on a

regular, if not weekly, basis.

8.  Nation Waste automatically deducted a thirty-minute meal period from my daily hours, even though I regularly worked through my meal period on Nation Waste's behalf. Specifically, I did not eat lunch or I would eat while working in order to complete my daily route assignments.

9.  My fellow drivers had the same routine as me and either ate while working or did not take a lunch break at all. I know this because I talked to my fellow co-workers on a regular basis about this issue.

10.  Nation Waste was aware that we ate our lunches while we were on duty and that we either routinely worked through lunch or did not take a lunch at all.

11.  I know that Nation Waste was aware that I did not take my lunch break because my daily routes were so time-consuming—that is, I could not complete them and also take an uninterrupted thirty-minute lunch break each day. Further, if I stopped during my route for more than a few minutes my supervisor would call me and tell me that I was not allowed to stop, and that I needed to get moving again right away.

12.  Based on conversations I have had with my fellow drivers, I know they would be interested to learn that they may be able to recover their unpaid overtime from Nation Waste.

13.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on: __Jan 9, 2019_____

Christopher Jenkins (Jan 9, 2019)
_____
CHRISTOPHER JENKINS

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| James Falcon, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-05-0792 |
| | § | |
| Starbucks Corporation, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

I.     Introduction.

        Plaintiff James Falcon seeks the Court's approval to send out notice to a potential

class of current and former Assistant Store Managers (ASMs) of Defendant Starbucks

Corporation ("Starbucks").  Falcon contends that Starbucks has violated the Fair Labor

Standards Act (FLSA) by failing to pay its ASMs for hours that they work in excess of

forty (40) hours per week.

        Starbucks opposes Falcon's request on numerous grounds.   Most basically,

Starbucks argues that Falcon cannot show – as he is required to do – that he is "similarly

situated" to members of the class that he seeks to notify of his FLSA claim.  *See* 29

U.S.C. § 216(b).  Starbucks has produced declarations of current and former ASMs,

which state that those ASMs have not been required to work more than 40 hours per

week without compensation.   Starbucks further contends that, because many ASMs

become Store Managers – who, Falcon alleges, are complicit in Starbucks's violations of

the FLSA – the class proposed by Falcon involves an inherent conflict.

II.     Applicable Legal Standard.

Under the FLSA, an employee may bring an action on behalf of himself and "other employees similarly situated." *Id.* In contrast to FED. R. CIV. P. 23, which permits potential class members to "opt out" of a suit, the FLSA requires that a putative class member affirmatively give his written consent to suit – *i.e.*, that he "opt in." 29 U.S.C. § 216(b).

Section 216(b) of the FLSA does not prescribe a particular procedure for determining whether putative class members are "similarly situated" so that they may proceed collectively. Most district courts, however, follow a two-step process. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). At the first, or "notice," stage, the court determines – usually based only upon the pleadings and any affidavits – whether notice should be given to potential class members. *Id.* As the Fifth Circuit has explained, "[b]ecause the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* at 1214. At the second stage, typically precipitated by a motion for decertification by the defendant after discovery is largely complete, "the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.*

III.    Falcon's Evidence.

In addition to his pleadings and briefing, Falcon has submitted declarations by seven former ASMs or Store Managers. The declaration of Cynthia Nerlinger is representative. Nerlinger states that she worked at several different Starbucks locations during her 22 months of employment and was a Store Manager for more than a year. She swears, under penalty of perjury, that her District Manager, whom she names, instructed

Store Managers that overtime was not permitted to be paid to any employees, including ASMs.  Nerlinger also swears that, at annual meetings in Colorado and Florida, District Managers, in the presence of Regional Managers, gave instructions that Store Managers not pay overtime wages for hours worked in excess of 40 per week.  Other declarations, covering different time periods and naming different management personnel, are to similar effect.

Starbucks objects that portions of the declarations contain hearsay statements and include information of which the respective declarants have not demonstrated personal knowledge.  Although Starbucks's contentions may be true in part, the key portions of each declaration reflect personal knowledge, and the most important statements are not hearsay under FED. R. EVID. 801(d)(2).

IV.     Conclusion.

Falcon has made a sufficient showing, under the lenient standard applicable at this stage, to proceed with notice to the putative class.  Issues of conflict of interest can be addressed at the "second stage" of the certification proceeding.  Counsel for the parties shall confer and seek to reach agreement as to the language of the notice and the procedures to be followed.

**IT IS SO ORDERED**.

**SIGNED** at Laredo, Texas, on this the 29th day of November , 2005.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

# EXHIBIT 4

United States District Court
Southern District of Texas

**ENTERED**

July 31, 2017

David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MATTHEW ROSAS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL NO. 2:16-CV-140 |
| | § | |
| DARK STAR PRODUCTION TESTING, | § | |
| INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

The Court has before it Plaintiffs' opposed Motion for Conditional Certification in this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Dkt. No. 12 [hereinafter "Mot. Certify"]. After considering the motion, the complaint, the accompanying evidence, the parties' arguments, and the applicable law, the Court **GRANTS** Plaintiffs' motion.

### I.    Background

Plaintiff Matthew Rosas ("Rosas") brings this case against a Canadian oilfield service company, Dark Star Production Testing, Inc. d/b/a Liberty Production Testing, Inc. ("Liberty"), and its Chairman and Director Sheldon Kasper ("Kasper," and collectively, "Defendants"), alleging that Defendants have engaged in a "payroll practice of paying all Field Employees a day rate only and no overtime compensation," in violation of the FLSA. Mot. Certify at 1. Liberty is "an oilfield service company" Rosas claims provides clients with equipment, technical expertise, and labor in Canada and the United States. *See* Dkt. No. 1 [hereinafter "Orig. Compl."]. Rosas brings this FLSA case against Defendants under the collective action provision of the FLSA, § 216(b), "individually and on behalf of all opt-in plaintiffs and other similarly situated current and former employees" (collectively, "Plaintiffs"), who "worked for Defendants over the past three years," "to recover unpaid overtime wages, liquidated damages, attorneys' fees, and costs." *Id*. He

claims that these potential members of this putative collective action all "performed technical and manual labor type job duties associated with various oilfield assignments and jobs" for Defendants, on job sites located "in different states across the country" where Defendants operate. *See* Orig. Compl.

Rosas claims that he "worked for Defendants throughout South Texas and the surrounding Eagle Ford Shale area from approximately November 2013 through April 2014." Orig. Compl. at ¶ 6. In a declaration attached to Plaintiffs' motion for conditional certification, Rosas specifies that he was employed with Defendants as a "Helper" and then as an "Operator," earning a day rate of $300 and then $450, respectively, in these positions. Mot. Certify. Ex 1, Decl. of Rosas. He states that during this time he "often worked twelve (12) hour shifts, seven days a week, up to three months at a time," typically for "a minimum of eighty-four (84) hours a week," and that during this time, Defendants did not compensate him "for any overtime hours worked." *Id.* at 2. He further claims that "Defendants paid other Helpers and Operators a day rate only and did not pay overtime," and states his belief that "other Helpers and Operators . . . would be interested to learn that they may recover unpaid overtime from Defendants." *Id.*

Rosas filed his complaint on May 3, 2016. Dkt. No. 1. Liberty alone answered the complaint, Dkt. No. 8, and two additional former employees of Defendants have opted in as plaintiffs: Arturo Trevino ("Trevino") and Jaime Ruelas, Jr. ("Ruelas"). Dkt. No. 3. Trevino has also filed a declaration with Rosas's motion for conditional certification, in which he states that while employed as an Operator for Defendants he "received a day rate of approximately $350 a day," and never received overtime, despite allegedly working "twelve hour shifts, seven days a week, up to three months at a time." Mot. Certify, Ex. 2, Decl. of Trevino. Trevino states that he performed this work for Defendants "during the relevant window of recovery," although he "cannot recall" the exact dates. He was employed by Defendants. *Id.* at 1. He makes no representation as to where, geographically, he performed this work. *See id.*

## II.    Legal Standard

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). Section 216(b) of the FLSA creates a cause of action for employees against employers violating FLSA requirements, and provides for collective actions brought by an employee for and on behalf of other employees. Specifically, it provides that "[a]n action  . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated," so long as each party plaintiff to such action files notice of written consent with the court where the action is brought. 29 U.S.C. § 216(b) (2016). Unlike a class certified pursuant to Federal Rule of Civil Procedure 23, under the FLSA, "'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action." *Id.* at 1530. Rather, the "sole consequence" of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court. *Id.*; *see also Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171–72 (1989). District courts have discretion in deciding whether to order notice to potential plaintiffs. *Aguirre v. SBC Communications, Inc.*, 2006 U.S. Dis. LEXIS 22211, at *15 (S.D. Tex. April 11, 2006) (citing *Hoffmann-La Roche*, 493 U.S. at 170–71).

District courts generally take one of two different approaches to conditional certification. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995). The first is commonly referred to as the "*Shushan* approach," which treats certification of a collective action under the FLSA and certification of a class under Rule 23 identically, requiring the plaintiff to establish numerosity, commonality, typicality, and adequate representativeness. *See Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990). The second is a "two-step ad hoc approach" that was utilized in *Lusardi v. Xerox Corp.*, 118 F.R.D 351 (D. N.J. 1987). This Court routinely utilizes the *Lusardi* approach. *See Malaska v. Saldivar Coastal Services, Inc.*, 2017 WL 1452584 (S.D. Tex. Apr. 20, 2017); *see also Jaso v. Bulldog*

*Connection Specialists, LLC*, 2015 WL 11144603 at *2 (S.D. Tex. Oct. 15, 2015); *see also Perez v. Valdez*, No. 1:13-CV-149, Slip Op. at 5 (S.D. Tex. Sept. 26, 2014) (Tagle, J.).

"The *Lusardi* method involves a "two-step" analysis of Section 216(b)'s "similarly situated" requirement. *Mooney*, 54 F.3d at 1214; *Kaluom v. Stolt Offshore, Inc.*, 474 F. Supp. 2d 866, 871 (S.D. Tex. Feb. 7, 2007). The two steps consist of a lenient "conditional certification" decision made at the so-called "notice stage," followed by a more rigorous analysis of the similarly situated issue, typically precipitated by a motion for "decertification," after discovery is largely complete and the matter is ready for trial. *Mooney*, 54 F.3d at 1214.

"At the first *Lusardi* stage, the district court makes a decision—usually based only on the pleadings and any affidavits that have been submitted—whether notice of the action should be given to potential class members." *Jaso*, 2015 WL 11144603, at *3 (citing *Mooney*, 54 F.3d at 1213–14). The district court makes this decision by "determin[ing] whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Id.*; *see also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (citing *Mooney*, 54 F.3d at 1213–14). Because the court has minimal evidence before it at this stage, its determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class that provides potential class members with notice and the opportunity to opt-in. *Mooney*, 54 F.3d at 1214 n.8; *McKnight v. D. Houston, Inc.,* 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010). If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *Aguirre*, 2006 U.S. Dis. LEXIS 22211 at *16 (citing *Mooney*, 54 F.3d at 1214).

The second stage of the *Lusardi* approach—the "decertification stage"—is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete. *Id.* (citing *Mooney*, 54 F.3d at 1214). "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.*

If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice; if the class is still similarly situated, the court allows the collective action to proceed. *Id.* At no point in the certification process may the court "address the merits of the claims . . . by ruling on factual disputes or making credibility determinations." *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 691 (S.D. Tex. 2013) (citing *Mooney*, 54 F.3d at 1214); *accord. McKnight*, 756 F. Supp. 2d at 802.

### III.   Conditional Certification

Plaintiffs define the proposed class as follows:

> All current and former Field Employees who worked for Dark Star Production Testing, Inc. d/b/a Liberty Production Testing, Inc. and Sheldon Kasper, at any time during the past three years and were paid a day rate and no overtime.

Mot. Certify at 1-2. Plaintiffs also submit proposed notice and consent forms to send to opt-in class members, Mot. Certify, Ex. 12. They request a sixty-day notice period and ask the Court to order Defendants to disclose the "names, addresses, e-mail addresses, and telephone numbers of the Putative Class members in a usable electronic format" within fourteen days of the Court's approval of their proposed notice. Mot. Certify at 14. They propose sending notice and a consent form to putative class members by mail and email, and request that Defendants additionally post a copy of these documents "on all job sites." *Id.* They additionally suggest mailing and emailing these documents to putative class members a second time, thirty days before the deadline for submission of consent forms, and request authorization for Plaintiffs' counsel to call putative class members to ensure consent forms have been received. *Id.*

Liberty does not attack the notice and consent procedures and forms Plaintiffs request. *See* Dkt. No. 13. Yet it does object to Plaintiffs' motion on the merits, and challenges the sufficiency of the evidence they proffer. *Id.* Specifically, Liberty argues that Plaintiffs have failed to provide sufficient factual evidence to support conditional certification on the basis that Plaintiffs have not: (i) provided

"even modest evidence to suggest that potential putative class members are similarly situated," (ii) shown putative class members were victims of a single decision, policy, or plan, or (iii) made even "a minimal showing that other individuals actually want to opt in to the lawsuit." *Id.* at 5-7. Liberty also claims that Plaintiffs' proposed class definition must geographically limit inclusion in the class to the counties where Rosas and Trevino, the declarants to the motion to certify, "actually worked." *Id.* at 9. It further avers that plaintiffs' class definition should be limited to apply only to alleged FLSA violations occurring between November, 2013 and April, 2014, the period during which Rosas was employed by Defendants. *Id.* at 9. Finally, Liberty claims that Defendant Kasper has not been properly served in this action, and that the Court should not rule on conditional certification "until such time as [he] can be properly and adequately served with summons for this lawsuit." *Id.*

Plaintiffs reply that conditional certification incorporates a "lenient" standard, and they have done all they must at this initial stage to substantiate their claims that Defendants had a policy or practice of violating the FLSA with respect to a group of "similarly situated" employees. *See* Dkt. No. 14. They additionally refute Liberty's claims that the putative class in this case should be limited by time or geography, arguing that it is "the date of approval of notice [that] is determinative for purposes of establishing a class period," and that a nationwide class is appropriate in this case. *Id.* at 6-7. Further, they allege that, by its failure to address notice and consent issues in its response to Plaintiffs' motion for certification, Liberty has waived any objections to Plaintiffs proposed forms and procedure. Finally, as to Liberty's claim that Kasper was not properly served in this action, Plaintiffs have submitted a return of service evidencing service of process on Kasper sufficient to satisfy Federal Rule of Civil Procedure 4(f)(1), which provides for service on an individual in a foreign country. *See* Dkt. No. 18; FED. R. CIV. P. 4(f)(1).

### a.  Liberty's Objections as to the Factual Sufficiency of Allegations

While the stage-one standard of conditional certification is lenient, it is not automatic. *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, 2012 WL 3308880 at *24 (citing *Badgett v. Tex. Taco Cabana, L.P.*, 2006 WL 2934265 at *2 (S.D. Tex. Oct. 12, 2006)). In particular, an FLSA plaintiff bears the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.* To establish this, the plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *Jaso*, 2015 WL 11144603 at *2; *Rueda v. Tecon Services, Inc.,* 2011 WL 2566072 at *2 (S.D. Tex. June 28, 2011); *Maynor v. Dow Chem. Co.*, 2008 WL 2220394 at *6 (S.D. Tex. May 28, 2008); *Aguirre*, 2006 U.S. Dis. LEXIS 22211 at *19. General allegations that an employer violated the FLSA do not ordinarily suffice to establish that other similarly situated employees exist. *Jaso*, 2015 WL 11144603 at *3 (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)); *see also Xavier v. Belfour USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) ("Although the 'similarly situated' standard is lenient at the notice stage, general allegations that the employer violated the FLSA are insufficient.") Specifically, even the "lenient" first step of the *Lusardi* analysis "appears to require substantial allegations that potential members 'were together the victims of a single decision, policy, or plan.'" *Aguirre*, 2006 U.S. Dis. LEXIS 22211 at *15 (quoting *Mooney*, 54 F.3d at 1213). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Id.* (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

Here, Rosas has stated that he has personal knowledge of other individuals employed by Defendants who were employed as Helpers or Operators who "worked the same type of hours," and were paid "a day rate only" with no overtime, as Rosas

alleges he was. Mot. Certify. Ex 1, Decl. of Rosas at 2. Additionally, two alleged former employees of Defendants, Trevino and Ruelas, have already opted in as plaintiffs. Dkt. No. 3. Trevino's declaration clearly corroborates Rosas's claims in as much as it states that Trevino, himself, is a "similarly situated employee." *See* Mot. Certify, Ex. 2, Decl. of Trevino (stating that Trevino worked for Defendants as an Operator for "twelve hour shifts, seven days a week, up to three months at a time," during which time he "received a day rate of approximately $350 a day," and no overtime.) Trevino's declaration also attests to his belief, based on personal knowledge, that other similarly situated employees exist who "would be interested to learn that they may recover unpaid overtime from Defendants." *Id.* While Liberty claims Plaintiffs' evidence is merely conclusory as to whether "similarly situated employees" actually exist, the Court finds it is reasonable to infer that other aggrieved employees with a similar work history to Rosas exist based on the two declarations attached to Plaintiffs' motion to certify, and the fact that two plaintiffs have already opted in to this litigation, prior to the dissemination of any notice. *See Jaso*, 2015 WL 11144603 at *3 (collecting cases).

As to Liberty's related claim that Plaintiffs have failed to show potential members of this putative collective action were victims of a single decision, policy, or plan, Plaintiffs allege that "Defendants paid all of their Field Employees a day rate (and no overtime) regardless of where they worked, which client they were working with, or any other individualized factors." Mot. Certify at 11. In support of this allegation, Plaintiffs cite to the declarations of Rosas and Trevino, and the presence of two opt-in plaintiffs in this litigation. Plaintiffs also cite to *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761 (S.D. Tex. 2015). Dkt. No. 14 at 5. In *Jones*, the court found that an allegation that *all* similarly situated employees were victims of the same FLSA violation—in this case, misclassification of workers as FLSA exempt—was effectively an allegation that "a centralized policy or custom violating the FLSA" existed. *Id.* at 774. Similarly, Plaintiffs argue, the "decision, policy, or plan" their complaint and motion to certify identify is Defendants' alleged wholesale failure to pay any Helpers or Operators employed in their field operations

the overtime they were legally owed, regardless of their "job title, location, or duty." *See* Dkt. No. 14 at 5. At this conditional certification stage, Plaintiffs must merely allege and provide minimal evidence to suggest that potential members of their proposed class "were together the victims of a single decision, policy, or plan." *Malaska*, 2017 WL 1452584 at 4 (quoting *Aguirre*, 2006 U.S. Dis. LEXIS 22211 at *15). The Court finds that Plaintiffs have satisfied this burden by alleging that Defendants consistently and globally violated the FLSA by failing to pay certain classes of employees overtime, and supporting this allegation with the declarations of Rosas and Trevino.

### b.  Limitations on the Putative Class

In addition to challenging the factual sufficiency of Plaintiffs' claims, Liberty argues the class definition proposed by their motion to certify must limit inclusion in the class to the Texas counties where declarants Rosas and Trevino "actually worked." Dkt. No. 13 at 9. Liberty further argues that the class definition should apply only to FLSA violations that occurred between November, 2013 and April, 2014, the period of time during which Rosas was employed by Defendants. *Id*. at 9. As to geography, Plaintiffs reply that a nationwide class is appropriate given their allegation that Defendants "were not properly paying their employees in accordance with the requirements of the FLSA, regardless of job title, location, or job duty." Dkt. No. 14 at 7. As to the time period covered by the class definition, Plaintiffs argue that typically, the date notice of a putative collective action is approved "is determinative for purposes of establishing a class period," and that limiting the class to workers employed by Defendants for up to three years before the approval of notice is standard. *Id*. at 6.

Defendants have made no argument before this Court alleging that their compensation practices differ within the United States based on geography, or that their practices do not apply uniformly to all Field Employees, as Plaintiffs allege. *See* Dkt. No. 13. Neither have they cited to any authority in support of their argument that the class definition proposed by Plaintiffs should be geographically

limited to cover only those workers employed by Defendants in the counties where Rosas and Trevino worked. *See id.* Meanwhile, Rosas's original complaint alleges that Defendants have employed "a substantial number of workers in the United States," who are "geographically dispersed, residing and working in states across the country"—and that "[b]ecause these workers do not have fixed work locations, they may work in different states across the country in the course of a given year." Orig. Compl. at ¶ 6.16. Further, the declarations proffered by Rosas and Trevino state that each worker often worked alone while working on-site in the field for Defendants. Mot. Certify, Exs. 1 and 2, Decls. of Rosas and Trevino. Accordingly, limiting Plaintiffs' proposed class definition to include only those workers employed at the same geographic sites as Rosas and Trevino would improperly curtail the collective character of Plaintiffs' claims and undercut their substantive allegation that Defendants have violated the FLSA by uniformly underpaying their workers "regardless of job title, location, or job duty." Dkt. No. 14 at 7.

Further, it is not reasonable to alter Plaintiffs' proposed class definition in order that it apply only to workers employed by Defendants during the precise time period Rosas was employed by Defendants. Indeed, the Court agrees with Plaintiffs that "[b]ased on the statute of limitations" for willful FLSA violations, courts routinely recognize "that class certification is appropriately limited to workers employed by [a] defendant up to three years before notice is approved by the court." *Toletino v. C&J Spec-Rent Services, Inc.*, 716 F. Supp. 2d 642, 654 (S.D. Tex. 2010). Defendants argue that Plaintiffs have offered no evidence to support a class definition spanning this timeframe, Dkt. No. 13 at 9, but Plaintiffs have no such burden. Establishing "a pattern and practice" of violating the FLSA ultimately requires "showing that the violations were more than sporadic occurrences," not substantiating a precise period during which violations occurred. *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003). Additionally, Defendants do not argue that their compensation practices or other relevant policies changed after April, 2014, when Rosas's employment with Defendants ended. The

Court therefore finds no reason to constrain in time Plaintiffs' proposed class definition as Defendants suggest.

### c. Notice and Consent Forms

Liberty has not objected to the notice and consent forms proposed by Plaintiffs, and on review of these documents and relevant law, the Court finds they are not improper.

### IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for conditional certification, Dkt. No. 12. The Court conditionally certifies a nationwide class defined as Plaintiffs propose. Pursuant to Federal Rule of Civil Procedure 16, the Court **ORDERS** that:

1. Plaintiffs proposed notice and consent forms, Mot. Certify, Ex. 11, are approved.

2. Within 14 days after the entry of this order, Defendants must produce a list of all Field Employees it employed at any time during the past three years. The list must be produced in an electronic form satisfying Federal Rule of Civil Procedure 34, and it must include, when available, each employee's name, mailing address, e-mail address, and telephone number.

3. Notices and consent forms are to be sent by regular and electronic mail within 7 days after Plaintiffs receive the list produced in compliance with the previous paragraph. Within 7 days after producing the list required by the previous paragraph, Defendants must post a copy of the notice and consent forms approved herein at each job site where Field Employees work. These copies of the notice and consent forms must remain posted until the opt-in period ends.

4. The opt-in period runs for sixty days from the date on which notices are sent.

5.  Thirty days after the opt-in period begins, Plaintiffs may contact by telephone potential opt-in plaintiffs to whom notices were sent to confirm receipt of these notices. Plaintiffs are also authorized, thirty days after the opt-in period begins, to send by mail and e-mail a second identical copy of the notice and consent forms reminding potential opt-in plaintiffs of the opt-in period deadline.

SIGNED this 31st day of July, 2017.

Hilda Tagle
Senior United States District Judge

# EXHIBIT 5

**THIS IS A COURT-APPROVED NOTICE**
**\*\*\*THIS IS NOT AN ADVERTISEMENT FROM A LAWYER\*\*\***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PAUL JOHNSON,** | § | |
| **Individually and on behalf** | § | **Civil Action No. 4:18-cv-04476** |
| **of all others similarly situated** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **NATION WASTE, INC.** | § | |
| | § | **COLLECTIVE ACTION** |
| *Defendant.* | § | **PURSUANT TO 29 U.S.C. § 216(b)** |

## NOTICE OF COLLECTIVE ACTION LAWSUIT

TO:     All Waste Disposal Drivers Who Worked for Nation Waste, Inc., at any time from _____[1] to the present.

RE:     Unpaid Overtime Lawsuit Against Nation Waste

**DEADLINE TO FILE CONSENT FORM: _____[2], 2019**

---

| 1.   Why Are You Getting This Notice? |
|---|

You received this Notice because the Court in charge of this lawsuit has ordered this Notice be sent to persons who are identified by Nation Waste's records as a current or former Waste Disposal Driver who worked for Nation Waste, and who were automatically deducted 30 minutes each work day for a meal break and/or who were not paid overtime in the past three years.

The Court has conditionally allowed or "certified" a collective action lawsuit that may affect you. This notice is intended to advise you of how your rights under the Fair Labor Standards Act ("FLSA") may be affected by this lawsuit and describe how to participate in this suit, if you want to.

---

[1] This date will be 3 years from the date the Notice is mailed.

[2] This date will be 60 days after the Notice is mailed.

## 2.    What Is This Lawsuit About?

Paul Johnson ("Plaintiff" or "Johnson") filed this lawsuit alleging that Nation Waste automatically deducted 30 minutes from each day worked for a meal break even though Plaintiff and other current and former Waste Disposal Drivers worked during these 30 minutes but were not paid for this time. The Plaintiff further alleges that Nation Waste did not pay overtime to Plaintiff and other current and former Waste Disposal Drivers.

In addition to alleged unpaid overtime, Plaintiff Johnson (and the additional Waste Disposal Drivers who have already joined this lawsuit) is seeking liquidated (double) damages equal to his alleged unpaid overtime, attorneys' fees, and costs.

Nation Waste denies Plaintiffs' allegations and contends that Plaintiff Johnson and other current and former Waste Disposal Drivers have been and continue to be properly paid under the FLSA. Additionally, any Drivers who crossed state lines on their routes are not eligible for overtime payments.

The Court has not decided who is right but has authorized this Notice to inform you of your right to join this lawsuit.

## 3.    Are You Eligible to Join This Lawsuit?

You are eligible to join this lawsuit if:

1.   You worked for Nation Waste at any time from _____ date to the present as a Waste Disposal Driver; and

2.   You were automatically deducted 30 minutes each work day for a meal break and you worked through your meal period; and/or

3.   You were not paid overtime.

## 4.    What are Your Options?

If you meet the criteria for this lawsuit, you have a choice to assert your legal rights in this case if you desire to do so. However, you are not required to do so and may choose to take no action without consequence to you.

If you want to become a party to this case, you must read, sign, and return the attached Consent to Join Wage Claim form by _____[3], **2019**.

You may return your consent form by filling out the attached Consent form, mailing it to Plaintiffs' attorneys in the enclosed self-addressed stamped envelope, faxing it to 361-452-1284, or emailing it to team@a2xlaw.com.

---

[3] This date will be 60 days after the Notice is mailed.

**5. Effect of Joining or Not Joining the Lawsuit.**

If you submit and file a timely Consent to Join Wage Claim form, you will be a party to the case unless the Court determines this case cannot proceed as a collective action. Therefore, if the Plaintiffs who filed this case win or settle the case, you may receive additional money from Nation. Waste. There is no guarantee that you will receive money from Nation Waste as a result of this lawsuit.

If the Plaintiffs who filed this case lose the case, you will receive nothing and will be bound by the decision, but you will not have to pay anything either.

If you do not wish to be a part of the lawsuit, you do not need to do anything. If you choose not to join the lawsuit, you will not be bound by any ruling, judgment, or settlement entered in this case, favorable or unfavorable. The decision to join is entirely yours.

Because the FLSA only allows workers to recover up to the past 3 years of back wages, eligible workers who do not join this litigation, may lose their rights to recover overtime for work performed in the past for Nation Waste.

**6. You Cannot and Will Not Be Fired for Joining This Lawsuit.**

Federal law prohibits Nation Waste, or any other employer from firing or in any other manner discriminating against you because you join this case.

Nobody who joins this case will be terminated or otherwise retaliated against for joining this lawsuit. If you suspect any retaliation, you should contact the attorneys below immediately at (361) 452-1279 and ask to speak with Clif Alexander or Austin Anderson.

**7. Your Legal Representation If You Join.**

If you choose to join this suit by completing and submitting the enclosed Consent Form you will be represented by the law firm ANDERSON ALEXANDER, PLLC. If you have any questions about the collective action, your rights or the claims being made in this lawsuit, you may contact the Plaintiffs' attorneys directly at:

**ANDERSON ALEXANDER, PLLC**
**819 N. Upper Broadway**
**Corpus Christi, Texas 78401**
**Telephone: (361) 452-1279**
**Fax: (361) 452-1284**
**team@a2xlaw.com**

You should not contact the Court to discuss this matter.

**8.    You Have Sixty (60) Days to Join this Lawsuit.**

Your determination of whether or not to take action should be made promptly. Because the law only allows a person to recover up to three (3) years of back wages from the date the Consent to Join Wage Claim form is filed, time is of the essence in submitting this form if you wish to have the opportunity to make a full recovery.

All Consents must be filed no later than _____, **2019,** which is sixty (60) days after this Notice was mailed to you. A Consent form is enclosed with a self-addressed stamped envelope.

## CONSENT TO JOIN WAGE CLAIM AGAINST NATION WASTE

Name: _____

1. I consent, agree, and opt-in to the lawsuit filed against Nation Waste, Inc. titled *Johnson v. Nation Waste, Inc.* 4:18-cv-04476 (S.D. Tex.) ("the Lawsuit"), to pursue my claims of unpaid overtime under the Fair Labor Standards Act ("FLSA") against Nation Waste.

2. I understand that the Lawsuit is brought under the FLSA, and I consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at ANDERSON ALEXANDER, PLLC, as my attorneys to prosecute my wage claims in the Lawsuit.

4. I consent to having the Representative Plaintiff in the complaint against Nation Waste, make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, releasing of claims, entering into an agreement with Plaintiff's Counsel regarding attorneys' fees and costs, and all other matters pertaining to this lawsuit.

Signature: _____     Date: _____

**Please print or type the following information which will be kept confidential:**

_____          _____
Mailing Address                           City/State/Zip

_____          _____
Home Telephone Number                     Cell Phone Number

_____          _____
E-Mail Address                            Estimated Dates of Employment

_____
Locations/Facilities Worked for Nation Waste

## RETURN THIS FORM BY MAIL, E-MAIL OR FAX TO:

**ANDERSON ALEXANDER, PLLC**
**819 N. Upper Broadway**
**Corpus Christi, Texas 78401**
**Telephone: (361) 452-1279**
**Fax: (361) 452-1284**
**team@a2xlaw.com**