IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL JOHNSON, on Behalf of Himself and on Behalf of Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:18-cv-04476 |
| v. | § § | JURY TRIAL DEMANDED |
| NATION WASTE, INC. | § § | |
| Defendant. | § § | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

**<u>DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CONDITIONAL CERTIFICATION
AND NOTICE TO PUTATIVE CLASS MEMBERS</u>**

**TABLE OF CONTENTS**

Page

| | | | |
|---|---|---|---|
| I. | NATURE AND STAGE OF THE PROCEEDING | | 1 |
| II. | ISSUES PRESENTED | | 2 |
| III. | FACTUAL BACKGROUND | | 3 |
| | A. | NWI Employed Plaintiff as a Roll-Off Driver from June 2018 to September 2018 and then Re-Hired Him as a Front Load Driver in September 2018 for 5 Days. | 3 |
| | B. | Plaintiff's was Required to Report All Time Worked and Was Advised of NWI's Policies and Practices. | 3 |
| IV. | STATEMENT OF THE ISSUES AND STANDARD OF REVIEW | | 5 |
| V. | ARGUMENT & AUTHORITIES | | 6 |
| | A. | Plaintiff Has Failed to Provide Sufficient Evidence or Allegations to Indicate That the Meal Deduction Policy or Practice Violates the FLSA. | 6 |
| | B. | Plaintiff Has Failed to Provide Any Evidence or Allegations to Support His Claim for "Off-the-Clock" Pre- and Post-Trip Inspections. | 7 |
| | C. | Plaintiff Has Not Shown That Aggrieved Individuals Exist that Are Similarly Situated to Plaintiff. | 7 |
| | D. | Plaintiff's Request for Approval of His Proposed Notice and Additional Requests Should Be Denied. | 11 |
| VI. | CONCLUSION | | 14 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguirre v. SBC Commc'ns, Inc.*,
    No. H-05-3198, 2006 WL 964554 (S.D. Tex. Apr. 11, 2006) ...................................................5

*Austin v. Onward, LLC*,
    161 F. Supp. 3d 457 (S.D. Tex. 2015) ......................................................................................6

*Behnken v. Luminant Min. Co., LLC*,
    997 F. Supp. 2d 511 (N.D. Tex. 2014) ....................................................................................12

*Brooks v. Coastal Chem. Co.*,
    No. 4:16-CV-296 (S.D. Tex. Feb. 6, 2017) .............................................................................11

*Garcia v. TWC Admin, LLC*,
    No. SA:14-CV-985-DAE, 2015 WL 1737932 (W.D. Tex. Apr. 16, 2015) .............................13

*Ihegword v. Harris Cnty. Hosp. Dist.*,
    929 F. Supp. 2d 635 (S.D. Tex. 2013) (Lake, J.), *aff'd*, 555 F.App'x 372 (5th
    Cir. 2014) ..................................................................................................................................7

*Kibodeaux v. Wood Grp. Prod.*,
    No. 4:16-CV-3277, 2017 WL 1956738 (S.D. Tex. May 11, 2017) ..........................................6

*Lopez v. Tri-State Drywall, Inc.*,
    861 F.Supp.2d 533 (E.D. Pa. 2012) ..........................................................................................9

*Myers v. Superior Energy Servs., Inc.*,
    No. 4:16-CV-1025, 2017 WL 86870 (S.D. Tex. Jan. 10, 2017) .............................................11

*Pickney v. Express Auto Grp., Inc.*,
    4:13-CV-02031, 2014 WL 4794587 (S.D. Tex. Sept. 24, 2015) ..............................................6

*Reyes v. Quality Logging, Inc.*,
    52 F. Supp. 3d 849 (S.D. Tex. 2014) ......................................................................................12

*Ridley v. Regency Vill., Inc.*,
    No. CV H-17-974, 2018 WL 1334813 (S.D. Tex. Mar. 15, 2018) .........................................13

*Rivenbark v. JPMorgan Chase & Co.*,
    340 F. Supp. 3d 619 (S.D. Tex. 2018) ......................................................................................5

*Senegal v. Fairfield Indus., Inc.*,
    No. CV H-16-2113, 2017 WL 1134153 (S.D. Tex. Mar. 27, 2017) .......................................12

*Songer v. Dillon Res., Inc.*,
    569 F. Supp. 2d 703 (N.D. Tex. 2008) ...................................................................................5

*Valcho v. Dallas County Hosp. Dist.*,
    574 F. Supp. 2d 618 (N.D. Tex. 2008) ...................................................................................6

*Vanzzini v. Action Meat Distrib. Inc.*,
    No. 4:11-CV-04173, 2012 WL 1941763 (S.D. Tex. May 29, 2012)........................................9

*Walker v. HongHua Am., LLC*,
    870 F. Supp. 2d 462 (S.D. Tex. 2012) ...................................................................................5

*In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*,
    No. 11-2266, 2013 WL 2180014 (S.D. Tex. May 17, 2013).................................................13

*Yaklin v. W-H Energy Servs., Inc.*,
    No. C-07-422, 2008 WL 1989795 (S.D. Tex. May 2, 2008).................................................12

**Statutes**

29 U.S.C. § 216(b) .................................................................................................................5

Defendant Nation Waste, Inc. ("Defendant" or "NWI") files this Response in Opposition to Plaintiff's Motion for Conditional Certification and Notice to Potential Class Members (the "Motion") and respectfully shows the Court as follows:

## I. NATURE AND STAGE OF THE PROCEEDING

In this Fair Labor Standards Act ("FLSA") lawsuit, Plaintiff Paul Johnson ("Johnson") alleges that NWI failed to properly calculate and compensate him for hours worked over forty in a workweek.[1] Specifically, in his Original Complaint, Plaintiff alleges that Defendant violated the FLSA by (1) subjecting him to an automatic thirty minute lunch break deduction; and (2) requiring him to perform "off-the-clock" pre- and post-trip vehicle inspections. Plaintiff is seeking conditional certification of a broad class of "all Waste Disposal Drivers who worked for Nation Waste, Inc. at any time from January 18, 2016 through the present."[2] Conditional certification of the requested class is untenable for the following reasons:

1. Plaintiff has failed to establish the existence of an unlawful policy or practice in the Motion. Maintenance of an automatic lunch break deduction by itself is not *per se* unlawful, and Plaintiff has failed to provide sufficient evidence in the Motion to articulate a violate of the FLSA. Similarly, Plaintiff fails to submit any evidence regarding performance of the alleged "off-the-clock" pre-and post-trip vehicle inspections (as alleged in the Original Complaint) or even raise the issue in the Motion.

2. Plaintiff has failed to meet his burden to show that aggrieved individuals exist who are similarly situated to the plaintiff and who want to opt-in to the lawsuit. The variance in pay practices asserted in the Motion and the declarations establish that even the declarants are not

---

[1] *See Plaintiff's Original Complaint* at ¶¶ 6-9 (Dkt. No. 1).
[2] Plaintiff's Motion at 1 (Dkt. No. 16).

similarly situated.  Moreover, Plaintiff has failed to identify the job positions he seeks to include in his proposed class of "Waste Disposal Drivers" (as that is not a NWI job title).  Additionally, the declarations provide no specific information regarding others within the class he seeks to certify who were required to (1) work through lunch without pay; and/or (2) perform "off-the-clock" pre and post-trip vehicles inspections.  Nor does Plaintiff provide sufficient testimony in his declaration (or the declaration of Christopher Jenkins) to indicate that there are others who were subjected to the alleged unlawful policies and are interested in joining this action.  Accordingly, Plaintiff has failed to provide even the modest factual showing required for conditional certification.

In addition, Plaintiff's request for Court approval of Plaintiff's proposed notice and his requests for overbroad and unfounded methods of transmission and for sensitive information about the putative collective action members should be denied as improper and unwarranted under the circumstances of this case. [3]

## II.     ISSUES PRESENTED

(1) Whether the Court should grant or deny Plaintiff's request for conditional certification of a proposed class containing "all Waste Disposal Drivers who worked for Nation Waste, Inc. at any time from January 18, 2016 through the present."  More specifically, whether Plaintiff has met his burden to show that: (a) there is a reasonable basis for crediting the assertions that aggrieved individuals exist; (b) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (c) those individuals want to opt-in to the lawsuit.

---

[3] *Id*. at 1-2.

(2) Whether Plaintiff's proposed notice, requested forms of transmission of the notice, and request for sensitive information about the putative collective action members is appropriate and warranted under the circumstances.

### III. FACTUAL BACKGROUND

#### A. NWI Employed Plaintiff as a Roll-Off Driver from June 2018 to September 2018 and then Re-Hired Him as a Front Load Driver in September 2018 for 5 Days.

NWI provides comprehensive waste collection and disposal services in the Houston area, including front-load dumpsters, roll-off containers, trash compactors, portable restrooms, hand-washing stations, and holding tanks.[4] NWI currently has approximately 5 Roll-Off Drivers.[5] Plaintiff Paul Johnson was employed as a Roll-Off Driver from June 11, 2018 until he resigned his employment on September 12, 2018.[6] Plaintiff was paid on an hourly basis and received overtime compensation at a rate of one and one-half times his regular rate for all reported hours worked between June 11, 2018 and September 12, 2018, excluding the thirty minute lunch break.[7]

NWI re-hired Plaintiff on or around September 17, 2018 to work as a Front Load Driver until he resigned his employment approximately four days later (on September 21, 2018).[8] Plaintiff did not work any overtime hours during this five day period he was employed as a Front Load Driver.[9] NWI does not have (nor has it ever had) a "Waste Disposal Driver" position nor has Plaintiff ever worked for NWI as a "Waste Disposal Driver."[10]

#### B. Plaintiff's was Required to Report All Time Worked and Was Advised of NWI's Policies and Practices.

---

[4] *See* Declaration of Javier Maldonado attached as Exhibit A.
[5] *Id*. at ¶5.
[6] *Id*. at ¶8. Plaintiff was also previously employed by NWI from January 14, 2015 to August 15, 2015 as a Roll-Off Driver. *Id*. at ¶7.
[7] *Id*. at ¶8.
[8] *Id*. at ¶9.
[9] *Id*. at ¶10; *Id.* at Exhibit 1.
[10] *Id*. at ¶12.

Throughout Plaintiff's employment he was required to clock-in immediately upon entering the NWI facility and clock-out at the end of his work day upon leaving the facility.[11] Plaintiff was aware of NWI's policy of deducting from the these hours thirty minute lunch breaks, and Plaintiff was instructed to take a thirty minute lunch break each day.[12] Plaintiff received instructions explaining when his lunch break should be taken, a document that he signed upon hire.[13]

As a Roll-Off Driver, Plaintiff was responsible for completing between 3 and 6 loads per day and reporting to the dispatcher before each load.[14] If Plaintiff wanted to work through his lunch on a particular day, he was expected to report that information to the dispatcher.[15] It was NWI's practice to not to take the thirty minute lunch break deduction where an employee reported working through his or her lunch break or did not otherwise take a lunch break on a particular day.[16] In the instances where it was discovered or brought to NWI's attention that Plaintiff had experienced an error in his pay, NWI promptly paid him for the requested time.[17] In fact, Plaintiff was disciplined several times during his short employment for failing to clock-in and/or out on at least 6 occasions.[18]

Regarding pre- and post-trip vehicle inspections, Plaintiff did not and could not have conducted any pre- and post-trip vehicle inspections "off-the-clock," as he and all other NWI employees clocked-in as they entered the facility and clocked out as they left the facility, and all of the vehicles were kept inside the facility approximately 40 feet from the entrance.[19]

---

[11] *Id.* at ¶13.
[12] *Id.* at ¶14-15.
[13] *Id.* at ¶16; *Id.* at Exhibit 2.
[14] *Id.* at ¶18.
[15] *Id.* at ¶19.
[16] *Id.* at ¶20.
[17] *Id.* at ¶21; *Id.* at Exhibit 3.
[18] *Id.* at 23; *Id.* at Exhibit 4.
[19] *Id.* at 25.

- 4 -

## IV. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The Court must rule on whether Johnson has met his burden to show that the proposed class is "similarly situated" within the meaning of the FLSA, thereby determining whether or not conditional certification of the class is warranted. If the Court conditionally certifies the class, then the Court must also rule on Johnson's proposed notice to putative class members.

Section 216(b) of the FLSA permits an individual plaintiff to bring a lawsuit "on behalf of himself… and other employees similarly situated." 29 U.S.C. § 216(b). Most courts in the Fifth Circuit, including the Southern District of Texas, use the two-step *Lusardi* approach to determine whether employees are "similarly situated" under the statute. *See Rivenbark v. JPMorgan Chase & Co.*, 340 F. Supp. 3d 619, 623 (S.D. Tex. 2018) (citing *Walker v. HongHua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012)).

At the first stage, also called the "notice stage," the Court must decide whether to conditionally certify the class and issue notice to potential class members. *Id*. Step one requires the plaintiff to show that: "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Id*. (quoting *Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006)). Step two is the "decertification stage," at which point the defendant may move for decertification of the conditionally certified class. At this stage, the Court must make a "factual determination as to whether the employees are similarly situated; if it so finds, the collective action may proceed." *Id*. at 623 (quoting *Walker*, 870 F. Supp. 2d at 466)).

The plaintiff bears the burden of proving that conditional certification is warranted. *See Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 706 (N.D. Tex. 2008) (denying conditional certification and noting that, "[w]hile the plaintiffs' burden at this stage is not onerous, neither is

it invisible."). Although the Court's decision at the first stage is made using a "lenient" standard, "[a] plaintiff may proceed collectively only if the challenged conduct is a generally applicable rule, policy, or practice. Therefore, conditional certification should be denied when the action arises from circumstances purely personal to the plaintiff." *Kibodeaux v. Wood Grp. Prod.*, No. 4:16-CV-3277, 2017 WL 1956738, at *1 (S.D. Tex. May 11, 2017) (internal citations omitted). A plaintiff's "conclusory allegations" are insufficient to satisfy this burden, even at the notice stage. *See Austin v. Onward, LLC*, 161 F. Supp. 3d 457, 465 (S.D. Tex. 2015).

## V. ARGUMENT & AUTHORITIES

Plaintiff's Motion should be denied in its entirety because he has failed to meet his burden to show (1) that there is a reasonable basis for crediting the assertions that aggrieved individuals exist; and (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) that those individuals want to opt-in to the lawsuit.

### A. Plaintiff Has Failed to Provide Sufficient Evidence or Allegations to Indicate That the Meal Deduction Policy or Practice Violates the FLSA.

Plaintiff's Motion assumes without any legal or factual support that the adoption of an automatic thirty minute lunch break deduction violates the FLSA. However, the maintenance of such a policy is not *per se* a violation of the FLSA. *See Valcho v. Dallas County Hosp. Dist.*, 574 F. Supp. 2d 618, 620 (N.D. Tex. 2008). Moreover, Plaintiff's declaration is devoid of any allegation that he was subject to the deduction on days when he did not take a lunch break and he specifically notified NWI that he did not take the lunch break. The law is clear that an employer cannot be held liable under the FLSA where the employee failed to notify the employer that he or she had worked additional overtime hours. *See Pickney v. Express Auto Grp., Inc.*, 4:13-CV-02031, 2014 WL 4794587 (S.D. Tex. Sept. 24, 2015) ("An employee cannot, however, perform

overtime work without the employer's knowledge or contrary to the employer's directions and then assert a right to be paid"); *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F. Supp. 2d 635, 663 (S.D. Tex. 2013) (Lake, J.), *aff'd*, 555 F.App'x 372 (5th Cir. 2014). Plaintiff' conclusory and self-serving statements in his declaration are insufficient to establish a violation of the FLSA with respect to the alleged meal deduction policy.

### B. Plaintiff Has Failed to Provide Any Evidence or Allegations to Support His Claim for "Off-the-Clock" Pre- and Post-Trip Inspections.

As noted above, Plaintiff alleges in the Original Complaint that he performed "off-the-clock" pre- and post-trip vehicle inspections.[20] Apart from this allegation being virtually impossible given the clock-in procedure and the location of the vehicles relative to the time-clock, Plaintiff has failed to even mention this claim in the Motion or Plaintiff's Declaration or the Jenkins Declaration. Given Plaintiff's failure to raise this issue in the Motion, NWI assumes for purposes of this Response that the claim has been abandoned.

### C. Plaintiff Has Not Shown That Aggrieved Individuals Exist that Are Similarly Situated to Plaintiff.

Apart from the deficiencies inherent in Plaintiff's underlying legal claims, Plaintiff has failed to meet its burden to sufficiently identity the existence of other aggrieved individuals who are similarly situated to Plaintiff. In his pleadings filed to date, Plaintiff has made inconsistent assertions about what pay practices are alleged, what pay the Plaintiff received, and what job titles he seeks to include in the collective action he seeks. Moreover, the evidence Plaintiff submits regarding Plaintiff's job duties and the job duties of the putative collective action members is a single allegation repeated verbatim in both Plaintiff's Declaration and the Jenkins Declaration that

---

[20] *See Plaintiff's Original Complaint* at ¶¶ 8, 34-45.

[m]y daily job duties included the collection and delivery of waste containers and compactors for Nation Waste and/or its clients in the Houston, Texas area." Not only do these unspecific and conclusory allegations fail to sufficiently describe the declarants' job duties, the declarations fail to even mention the job duties or titles of any positions other than the two they claim to have held during their employment (Roll-Off Driver and "Commercial Driver").

In addition to a clear failure to articulate the job positions and job duties of the proposed class, Plaintiff's pleadings are rife with inconsistencies and contradictions regarding essential facts. Specifically, in the Original Complaint (filed only two months ago) Plaintiff alleges that he and the Putative Collective Action Members are "Waste Disposal Drivers" who "are non-exempt employees paid by the hour" and were subject to the following allegedly unlawful pay practices: (1) thirty minute automatic lunch period deductions; and (2) "off-the-clock" pre- and post-shift vehicle inspections.[21] However, in the Motion, Plaintiff now claims that he was simultaneously a "Waste Disposal Driver" and a "Roll-Off Driver" and that he was paid both "$19.00 per hour plus overtime for all hours worked over forty each week" and "a day rate in the amount of $200 with no overtime" all in the same 4 month period in 2018. The allegations in Plaintiff's Motion and declaration obviously do not match (and are inconstant with) the allegations in the Lawsuit currently on file.[22] To the extent that Plaintiff seeks to bring claims on behalf of individuals who were not paid on an hourly basis (as specifically alleged in the Original Complaint), there is no basis for him to do so here in the Motion.[23]

---

[21] *See Plaintiff's Original Complaint* at ¶¶ 7-8.

[22] As noted above, Plaintiff has also seemingly abandoned the allegation in his Original Complaint that he was made to perform "off-the-clock" pre- and post-shift vehicle inspections by failing to mention it in the Motion or the supporting declarations.

[23] In addition, to the extent that Plaintiff seeks to recover overtime wages in connection with his one week employment as a Front Load Driver and/or bring claims on behalf of other Front Load Drivers, he has no standing to do so – as he did not work any overtime hours during his time as a Front Load Driver and could not have been denied any overtime

- 8 -

Moreover, the declaration Plaintiff attaches to the Motion from the only individual who currently consents to participate in this action (Christopher Jenkins)[24] clearly demonstrates that the group of individuals Plaintiff seeks to certify is not similarly situated to him. For example, Jenkins testifies in his declaration that he was employed as a "Commercial Driver" in the year prior to Plaintiff and but was allegedly paid "$17.00 per hour for all hours worked" and no overtime wages.[25] Plaintiff's evidence demonstrates that even among Plaintiff and the single opt-in, there are varying alleged pay practices ranging from hourly pay with overtime pay, hourly pay without overtime pay, and a day rate with no overtime pay. "For the class representative to be considered similarly situated to the potential opt-in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Vanzzini v. Action Meat Distrib. Inc.*, No. 4:11-CV-04173, 2012 WL 1941763 (S.D. Tex. May 29, 2012).

Aware of the dilemma the varying pay practices creates, Plaintiff specifically acknowledges in the Motion that the pay practices "differed" and that "some Waste Disposal Drivers were paid a day rate and no overtime and others were paid straight time and no overtime." However, Plaintiff nonetheless asks the Court to overlook the divergent pay practices and still certify a class of all "Waste Disposal Drivers" (which as, noted above, is not an actual NWI job title or position) regardless of pay practice or theory of liability. Instead of seeking to certify a class of individuals who were "non-exempt hourly" individuals in the same

---

wages as a result of the thirty minute lunch break by virtue of his alleged pay structure (day rate) during that 5 day period. *See Lopez v. Tri-State Drywall, Inc.*, 861 F.Supp.2d 533, 536 (E.D. Pa. 2012) (because plaintiff does not have "a cognizable claim under the FLSA," he "cannot bring a collective action on behalf of his co-workers under the FLSA, even assuming those co-workers state cognizable claims under the [FLSA]").

[24] Plaintiff filed a motion on January 18, 2019 withdrawing the other consent he previously filed in this case on behalf of Donald Hanes. *See* Dkt. No. 14. Notably Mr. Hanes did not provide a declaration in support of the Motion.
[25] Pl.'s Mot. at Ex. 2 at ¶3.

job position as Plaintiff, who were supervised by the same supervisor, and who were not paid overtime due to the thirty minute lunch break deduction, Plaintiff attempts to make a grab for anyone who could potentially fall within this fictional "Waste Disposal Driver" title[26] under the faulty premise that a broad allegation of entitlement to unpaid overtime wages alone (regardless of pay practice or legal theory) is sufficient to meet the "lenient" *Lusardi* standard. Adoption of Plaintiff's rationale would swallow the rule and render the "similarly situated" inquiry obsolete. Under Plaintiff's proffered theory, the class does not have to be similarly situated, just allegedly entitled to some overtime wages based on any number of pay practices or legal theories.[27] This theory is untenable and contrary to the rationale behind the certification process. Plaintiff has clearly failed to meet his burden to show that he and the proposed putative class members were impacted by a "single decision, policy or plan" and that conditional certification of the requested class is justified and appropriate.

Moreover, Plaintiff is even inconsistent within the Motion itself regarding the alleged factual circumstances surrounding his claims. Despite acknowledging in his declaration that Defendant did pay him overtime wages during the applicable period, Plaintiff broadly alleges in the Motion (incorrectly) that NWI "didn't pay its non-exempt Waste Disposal Drivers – Plaintiffs and the Putative Class Members – **ANY** overtime regardless of where they worked, how long they worked, or any other individualized factors."[28] Plaintiff's supporting declarations and arguments simply do not fulfill his burden to demonstrate that aggrieved individuals exist and that they are similarly situated to Plaintiff in relevant respects given the claims and defenses asserted.

---

[26] It is clear that Plaintiff made no attempt to find out which job positions he intends to include in his proposed class before initiating this action and filing this Motion.
[27] Pl.'s Mot. at 8 ("Though the pay practice may have differed, the policy and effect were the same—that is, Plaintiff and the Putative Class Members were denied overtime for all hours worked in forty each week").
[28] Pl.'s Mot. at 8.

In addition, language identical to the bare assertions in Plaintiff's declaration that "[his fellow drivers] would be interested in learning that they may be able to recover their unpaid overtime from Nation Waste"[29] has been found by this Court to be insufficient to establish that other allegedly aggrieved individuals want to opt in to the lawsuit. *Brooks v. Coastal Chem. Co.*, No. 4:16-CV-296 (S.D. Tex. Feb. 6, 2017) (finding Plaintiff's assertion in his own declaration that similarly situated individuals would be "interested to learn about their rights" was insufficient); *see also Myers v. Superior Energy Servs., Inc.*, No. 4:16-CV-1025, 2017 WL 86870 (S.D. Tex. Jan. 10, 2017). To the extent that the Court takes this particular factor into consideration, it clearly weighs against conditional certification.

Because Plaintiff has failed to meet his burden to show that (1) there is a reasonable basis for crediting the assertions that aggrieved individual exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit, his request for conditional certification of a class of "all Waste Disposal Drivers who worked for Nation Waste, Inc. at any time from January 18, 2016 through the present" should be denied.

### D. Plaintiff's Request for Approval of His Proposed Notice and Additional Requests Should Be Denied.

Plaintiff's proposed notice (the "Notice") is deficient in several respects. First, the Notice contains many statements that are misleading, one-sided, and solicitous. For example, the Notice directs the recipient to contact Plaintiff's counsel if they have any questions about the collective action or their rights.[30] In addition, the Notice advises the recipient that

---

[29] The Jenkins Declaration contains the same language verbatim. *Id.* at Ex. 1 at 13; Ex. 2 at 12.
[30] Pl.'s Mot. at Ex. 5 at ¶2.

> Your determination of whether or not to take action should be made promptly. Because the law only allows a person to recover up to three (3) years of back wages from the date the Consent to Join Wage Claim form is filed, time is of the essence in submitting this form if you wish to have the opportunity to make a full recover.[31]

This and other solicitous and inaccurate statements should be removed from any notice approved in this Lawsuit. In light of the number of such inaccuracies and unbalanced statements contained throughout the Notice, Defendant respectfully requests that Court permit Defendant to submit a proposed revised notice for the Court's consideration with an explanation of the basis for the proposed revisions if the Court grants Plaintiff's Motion in whole or in part.

Second, the Notice fails to instruct the potential opt-in class that each individual may seek counsel of his or her own choice. The recipients of the Notice should be fully informed of their rights to speak with counsel of their choice about the lawsuit. Courts in this district have specifically held that "[t]he notice must inform potential opt-in plaintiffs that they may contact any attorney of their choosing to discuss the case." *Reyes v. Quality Logging, Inc.*, 52 F. Supp. 3d 849, 853 (S.D. Tex. 2014) (citing *Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008) (ordering plaintiffs to add such language to the notice).

Third, the proposed Notice improperly fails to inform potential opt-ins of their possible discovery and trial obligations should they join the action. The recipients should be fully informed that they may be required to appear for depositions, answer interrogatories, respond to requests for production, and testify in court. "Courts routinely approve of such language" in the notices. *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 524-25 (N.D. Tex. 2014); *see also Senegal v. Fairfield Indus., Inc.*, No. CV H-16-2113, 2017 WL 1134153, at *8 (S.D. Tex. Mar. 27, 2017). In addition, the proposed Notice fails to inform potential opt-ins of the possibility that

---

[31] *Id.* at ¶4.

Defendant's court costs and expense could potentially be assessed against them and all other plaintiffs if they do not prevail on their claim.

Fourth, Plaintiff's request that he be allowed to email putative class members, in addition to mailing them the notice should be denied or, in the alternative, only be permitted where the mailing was returned as undeliverable. *See Garcia v. TWC Admin, LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *4 (W.D. Tex. Apr. 16, 2015) (not allowing contact by both mail and email because mail was sufficient, but allowing another method of contact if mail was returned as undeliverable). For the same reason, Plaintiff's request to send the notice also by text message and call the putative class members directly is not warranted or appropriate in this case.[32]

Additionally, Plaintiff's requests to post notice at NWI's locations and Plaintiff's request for putative class members' driver license numbers, phone numbers, dates of birth, email addresses, and social security numbers should be denied as unnecessary and overly intrusive. *See In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, No. 11-2266, 2013 WL 2180014, at *2 (S.D. Tex. May 17, 2013) ("[P]ostings [only reaching current employees] would thus merely be supplemental to the mailed notice and are therefore overly intrusive."); *Ridley v. Regency Vill., Inc.*, No. CV H-17-974, 2018 WL 1334813, at *9 (S.D. Tex. Mar. 15, 2018) ("there is no reason to produce more than the name, last known mailing address, and dates of employment for each putative collective action member at the notice stage").

---

[32] Note that Plaintiff's request to call the putative collective action members "to ensure the Consent forms were received" was snuck into Plaintiff's Proposed Order but is not requested or addressed in the Motion. Similarly, Plaintiff's request to send a follow up text message after 30 days (in addition sending it via mail and e-mail) appears only in the Proposed Order and is not mentioned or requested in the Motion. Therefore, these requests are not properly before the Court.

Lastly, Plaintiff's Proposed Order improperly includes the following language which is not addressed or requested in the Motion at all and improperly seeks to prohibit Defendant from communicating with its employees or potential witnesses "about any matters which touch or concern" the claims in this Lawsuit "or other matters related to this suit" during the pendency of the Lawsuit:

> The Court also ORDERS that Defendant is hereby prohibited form communicating directly or indirectly, with Plaintiffs or Putative Class Members about any matters which touch or concern the outstanding wage claim, or other matters related to this suit, during the pendency of this lawsuit. Defendant shall instruct all of its managers of the requirements of this Order. This Order shall not restrict Defendant from discussing with Plaintiffs or Putative Class Members matters that arise in the normal course of business. Defendant is further prohibited from directing, permitting, or undertaking, either directly or through any employee, agent, or other intermediary, activities that intimidate, threaten, restrain, harass, coerce, or in any manner discriminate against Plaintiffs, Putative Class Members, witnesses, potential witnesses, or their respective family members.

There is simply no basis for inclusion of such language in the Court's Order. For Plaintiff to sneak such language into its Proposed Order without an actual request in the Motion and without briefing the propriety or need for such language is improper.

## VI.     CONCLUSION

For the foregoing reasons, Nation Waste respectfully requests that this Court deny Johnson's Motion for Conditional Certification and grant Nation Waste all other relief to which it is justly entitled at law or in equity.

Respectfully submitted,

By    */s/ Mark D. Temple*
      Mark D. Temple (Attorney-In-Charge)
      State Bar No. 00794727
      Southern District of Texas Bar No. 19552
      mtemple@reedsmith.com
      811 Main Street, Suite 1700
      Houston, Texas 77002-6110
      (713) 469-3800 Telephone
      (713) 469-3899 Facsimile

      Of Counsel

      Hollie L. Reiminger
      State Bar No. 24060559
      Federal ID No. 1037349
      811 Main Street, Suite 1700
      Houston, Texas 77002
      (713) 469-3800 - Telephone
      (713) 469-3899 - Facsimile
      hreiminger@reedsmith.com

      REED SMITH LLP

ATTORNEYS FOR DEFENDANT
NATION WASTE, INC.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this the 8th day of February, 2019, a true and correct copy of the foregoing document was electronically filed with the Court and made available to all counsel of record via the Court's ECF system.

*/s/ Mark D. Temple*
Mark D. Temple
